**Carole Keeton RYLANDER, Comptroller of Public Accounts for the State of Texas, Appellant,**

v.

**Marcie CALDWELL, Individually and on Behalf of all Others Similarly Situated, Appellee.**

No. 03–00–00063–CV.

Court of Appeals of Texas, Austin.

May 31, 2000.

Christopher S. Jackson, Asst. Atty. Gen., Taxation Division, Austin, for Appellant.

Joe K. Crews, Diane S. Jacobs, Ivy, Crews & Elliott, P.C., Austin, for Appellee.

Before Chief Justice ABOUSSIE, Justices KIDD and B.A. SMITH.

BEA ANN SMITH, Justice.

Appellee Marcie Caldwell sued the Comptroller seeking a declaration that section 51.702(b) of the Texas Government Code is unconstitutional. The Comptroller filed a plea to the jurisdiction, which the trial court denied. The Comptroller now appeals the trial court's interlocutory order,[1] alleging that the court erred because appellee's suit is barred by sovereign immunity or the trial court otherwise lacked subject matter jurisdiction. We will affirm the trial court's order denying the plea to the jurisdiction.

## BACKGROUND

Caldwell filed a class action lawsuit challenging the constitutionality of section 51.702(b) of the Texas Government Code. The statute provides in part: "In addition to other court costs, a person shall pay $15 as a court cost on conviction of any criminal offense in a statutory county court, including cases in which probation or deferred adjudication is granted." Tex. Gov't Code Ann. § 51.702(b) (West Supp. 2000). The court cost is to be collected "in the same manner as other fees, fines, or costs are collected in the case." *Id.* § 51.702(c). The court clerk must then send the collected fees or costs to the Comptroller. *See id.* § 51.702(d). The Comptroller deposits the fees into a judicial fund, which is used to supplement judges' salaries in participating statutory county courts. *See id.* Not all counties with statutory county courts have opted to collect the additional fees to supplement judges' salaries. Because this results in court costs that vary from county to county, Caldwell claims her rights under the due course of law and equal rights provisions of the Texas Constitution have been violated.

In her suit, Caldwell, individually and on behalf of the certified class, sought to enjoin the Comptroller from continuing to collect and disburse the court costs collected under section 51.702(b) of the Government Code, asked the court to declare that section 51.702(b) of the Government Code

1. Section 51.014(a)(8) of the Texas Civil Practices and Remedies Code authorizes an appeal of an interlocutory order granting or denying a governmental unit's plea to the jurisdiction. *See* Tex. Civ. Prac. & Rem.Code Ann. § 51.014(a)(8) (West Supp.2000).

violates the Texas Constitution, and sought reimbursement of reasonable attorney's fees. In response, the Comptroller filed a plea to the jurisdiction, alleging the court was without jurisdiction to consider Caldwell's suit because (1) Caldwell lacks standing to seek the relief requested; (2) the Comptroller is not the proper defendant; (3) injunctive relief is not proper because Caldwell and the class have an adequate remedy at law; (4) Caldwell's claims are barred by the doctrine of sovereign immunity; (5) Caldwell has no claim for declaratory relief; and (6) Caldwell failed to comply with the Tax Code's requirements for claiming a refund. The trial court denied the Comptroller's plea to the jurisdiction, and the Comptroller appeals this interlocutory order. On appeal the Comptroller complains that Caldwell's suit is barred by sovereign immunity, Caldwell is required to challenge the collection of the fees under the Texas Code of Criminal Procedure, and no justiciable controversy exists between Caldwell and the Comptroller that can be addressed through injunctive or declaratory relief.

## DISCUSSION

■ Subject matter jurisdiction is essential to the authority of a court to decide a case. *See Texas Ass'n of Business v. Texas Air Control Bd.*, 852 S.W.2d 440, 443 (Tex.1993). "A plea to the jurisdiction challenges the trial court's authority to determine the subject matter of a specific cause of action." *Texas State Employees Union/CWA Local 6184 v. Texas Workforce Comm'n*, 16 S.W.3d 61, 65 (Tex. App.—Austin 2000, no pet. h.). In order to prevail, the party asserting the plea to the jurisdiction must show that even if all the allegations in the plaintiff's pleadings are taken as true, there is an incurable jurisdictional defect apparent from the face of the pleadings, rendering it impossible for the plaintiff's petition to confer jurisdiction on the trial court. *See id.*

■ Because subject matter jurisdiction presents a question of law, we review the trial court's decision under a de novo standard of review. *See id.* at 65. In reviewing a trial court's ruling on a plea to the jurisdiction, we do not look at the merits of the case; rather, we "construe the pleadings in favor of the plaintiff," look to the pleader's intent, and accept the pleadings' factual allegations as true. *Id.* at 65. "The truth of the plaintiff's allegations is at issue only if the defendant pleads and proves that the allegations were fraudulently made to confer jurisdiction on the court." *Id.* at 65.

In her first point of error, the Comptroller contends that Caldwell's suit is barred by the doctrine of sovereign immunity because the State has not waived sovereign immunity in suits such as this one unless the cause of action is brought under the Tax Code. In the alternative, the Comptroller argues that while an exception to sovereign immunity arises for State officials' ultra vires acts, the Comptroller's actions were not ultra vires and therefore, the exception does not apply.[2]

■ Sovereign immunity generally protects the State from lawsuits for damages absent legislative consent to sue the State. *See Federal Sign v. Texas S. Univ.*, 951 S.W.2d 401, 405 (Tex.1997). However, when a party's rights have been violated by the unlawful acts of a state official or by a state agent acting pursuant to an unconstitutional law, the suit is not an action against the State requiring the State's consent. *See Texas Workers' Compensation Comm'n v. Garcia*, 862 S.W.2d 61, 72 (Tex.App.—San Antonio 1993), *rev'd on other grounds*, 893 S.W.2d 504. This is

**2.** The Comptroller originally argued that Caldwell's suit is barred because she seeks monetary damages from the State. However, Caldwell's amended petition clearly asserts that she has relinquished any claims that purport to seek money damages. In her post-submission brief, the Comptroller acknowledges that appellees have renounced any claim for monetary relief and that the appeal now centers on the question of the court's jurisdiction for declaratory and injunctive relief.

true even though the judgment may be binding on the State. *See id.*

■■■ The State maintains that the trial court was without jurisdiction to consider Caldwell's cause of action because the "Legislature has not specifically granted Plaintiffs permission to sue the Comptroller" to recover fees from the State or to enjoin the Comptroller other than through the Tax Code. Chapter 112 of the Tax Code sets out the prerequisites necessary to bring suit against the State to recover taxes or fees paid to the State under protest. *See* Tex. Tax Code Ann. § 112.052 (West 1992); *Contran Corp. v. Bullock,* 567 S.W.2d 616, 616 (Tex.Civ.App.—Austin 1978, no writ). Here, however, Caldwell does not seek a refund of a tax or fee as contemplated by Chapter 112 of the Tax Code; nor is Caldwell seeking to enjoin collection of the fees. The relief requested by Caldwell consists of a declaration that section 51.702 of the Government Code is unconstitutional and an injunction prohibiting the Comptroller from continuing to administer funds pursuant to that section—claims that are in essence not against the State and therefore do not require the State's consent to be sued.[3]

The Comptroller also contends that it has not waived its sovereign immunity because the Comptroller's acts in disbursing the collected fees were not ultra vires. The Comptroller was acting pursuant to the legislature's mandate, and thus the exception to sovereign immunity does not apply. According to the Comptroller, "there are no cases allowing declaratory and injunctive relief ... from the State without a waiver of sovereign immunity,

where the State was acting according to an express statute." We disagree.

■■■ It is axiomatic that a "party must have legislative consent or statutory authorization before it can maintain a suit and recover a judgment that will operate to control state action, subject the state to liability, or affect the state's property rights and interests." *Bagg v. University of Tex. Med. Branch,* 726 S.W.2d 582, 584 (Tex.App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.). However, contrary to the Comptroller's assertions, it is also well recognized that declaratory relief is the proper remedy when challenging the constitutionality of a statute and that plaintiffs are not required to obtain the State's consent before suing for declaratory judgment. *See Garcia,* 862 S.W.2d at 72; *Cobb v. Harrington,* 144 Tex. 360, 190 S.W.2d 709, 713 (1945). A suit seeking a declaratory judgment that a state agent is acting pursuant to an unconstitutional law is not an action against the State barred by sovereign immunity. *See Garcia,* 862 S.W.2d at 72. It is also well settled that when a party's rights have been violated by a state agent's action pursuant to an unconstitutional law, that party may sue to remedy the violation or prevent its recurrence. *See id.; Director of the Dep't of Agric. & Env't v. Printing Indus. Ass'n,* 600 S.W.2d 264, 265–66 (Tex.1980). Thus, a party may seek to enjoin the actions of a state official even though the official may assert defenses only as a state official acting on behalf of the State and even though the judgment may be binding on the State. *See Garcia,* 862 S.W.2d at 72; *Bagg,* 726 S.W.2d at 585. The suit is not a suit against the

---

**3.** Even if we were to accept the Comptroller's argument and assume that Caldwell's suit is intended to enjoin the Comptroller from collecting a "tax" as contemplated by Chapter 112 of the Tax Code, Caldwell has not requested a refund of the funds collected. Thus, Caldwell would not be relegated to the requirements of the Tax Code. Moreover, because we hold later in this opinion this is not a suit against the State, Caldwell need not seek legislative consent or exhaust the administrative remedies set out in the Tax Code

before instituting this suit. *Compare Commercial Standard Fire & Marine Co. v. Commissioner of Ins.,* 429 S.W.2d 930, 934 (Tex.Civ. App.—Austin 1968, no writ) (remedy by way of protest is not exclusive remedy, but cumulative one where State has consented to be sued) *with Contran Corp. v. Bullock,* 567 S.W.2d 616, 617–18 (Tex.Civ.App.—Austin 1978, no writ) (in suit against *State,* plaintiff must allege and prove consent or exhaust statutory administrative remedies to confer jurisdiction on court).

State. Because Caldwell's suit falls squarely within this exception to sovereign immunity, we overrule the State's first point of error.

■ The Comptroller next argues that Caldwell's exclusive remedy to contest the section 51.702(b) fees is to file a motion to correct costs under article 103.008 of the Code of Criminal Procedure. The Comptroller maintains that the district court is without jurisdiction to consider the constitutionality of the section 51.702 fees because they are criminal fees and should be contested in the court where the criminal case was last pending. Article 103.008(a) of the Code of Criminal Procedure provides: "On the filing of a motion by a defendant not later than one year after the date of the final disposition of a case in which costs were imposed, the court in which the case is pending or was last pending shall correct any error in the costs." Tex.Code Crim. Proc. Ann. art. 103.008 (West Supp.2000). By its express language, this article applies in cases where a party complains of an "error" in the costs assessed. Clearly, Caldwell's suit does not concern an allegation of any "error" in the calculation of costs. Rather, Caldwell is seeking a declaration that the statute imposing the costs is unconstitutional. We therefore find article 103.008 inapplicable and hold that Caldwell was not limited to filing her suit in the court in which her criminal case was tried. We overrule the Comptroller's second point of error.

In her final point of error, the Comptroller presents two arguments. First, she argues that because Caldwell is challenging a criminal statute, she must comply with the requirements set forth in State v. Morales, 869 S.W.2d 941 (Tex.1994), to confer jurisdiction on the court, which she failed to do. Second, the Comptroller contends there is no justiciable controversy to resolve between Caldwell and the Comptroller that injunctive or declaratory relief would resolve. Even if the trial court were to enjoin the Comptroller from receiving and disbursing the fees, she argues, the counties could continue to collect the fees without forwarding them to the Comptroller to be deposited and disbursed.

■ We first address the Comptroller's characterization of section 51.702 as a criminal statute. Citing Ex parte Carson, 143 Tex.Crim. 498, 159 S.W.2d 126 (1942), the Comptroller maintains that because court costs are part of the punishment assessed for an offense charged, the statute authorizing the costs must be a criminal statute. See 159 S.W.2d at 129. A constitutional challenge to the statute would therefore be subject to the requirements set forth in Morales. See 869 S.W.2d at 944–48. The Comptroller also emphasizes Carson's distinction between civil and criminal court costs and the court's refusal to extend its holding to civil court costs. See 159 S.W.2d at 130 (op. on rehearing). She interprets this as an implication that court costs assessed in criminal cases may only be challenged by appealing the criminal conviction.

The Comptroller has overstated the holding in Carson, which involved an appeal of the denial of a writ of habeas corpus. See id. at 127. Carson argued that certain court costs were unconstitutional. See id. The court of criminal appeals considered the constitutionality of the court costs only as they applied to criminal convictions because the issue was presented on an appeal of a criminal conviction. Contrary to the Comptroller's assertions, the court did not hold that the statute authorizing the court costs must be a criminal statute, or that the statute can only be challenged through an appeal of the criminal conviction for which they were assessed. The holding in Carson did not turn on whether the statute authorizing the fees could be characterized as a criminal statute, and it certainly did not turn on whether the constitutionality of the statute could be determined in a civil suit. Accordingly, we do not find Carson applicable to this case.

The statute at issue here is intended to supplement judicial salaries, not to criminalize certain behavior. Accordingly, we determine that this is not a criminal statute. Because section 51.702 is not a criminal statute, the trial court need not determine whether a civil court's equity jurisdiction should be expanded to address the constitutionality of a criminal statute. *See Morales,* 869 S.W.2d at 942, 947. The issue before the district court is whether the manner of funding an increase in judicial salaries has inadvertently run afoul of the constitution. Thus, Caldwell was not required to satisfy the requirements set forth in *Morales* in order to confer jurisdiction on the court.

■ With regard to justiciable controversy, the Comptroller directs us to *Lone Starr Multi Theatres, Inc. v. State,* 922 S.W.2d 295 (Tex.App.—Austin 1996, no writ), in support of her argument that because she does not initially collect the fees, she is not the party responsible for enforcement of the challenged statute. We agree that a court is without jurisdiction to determine the constitutionality of a statute unless a party with authority to enforce the challenged statute is named in the suit; otherwise, the judgment would amount to an advisory opinion, which courts are unauthorized to give. *See Lone Starr Multi Theatres,* 922 S.W.2d at 297. Similarly, a court may not issue an injunction unless "it is shown that the respondent will engage in or is engaging in the activity sought to be enjoined." *Id.* at 298. It is also true, however, that a person whose rights have been violated by a state official acting pursuant to an unconstitutional statute "may bring suit to remedy the violation or prevent its occurrence." *Printing Indus.,* 600 S.W.2d at 265–66.

In *Lone Starr Multi Theatres,* the plaintiff attempted to challenge the constitutionality of obscenity statutes by suing the Attorney General—a party without authority to enforce the challenged statutes. *See* 922 S.W.2d at 298. In this case, Caldwell challenges the constitutionality of section 51.702(b) of the Government Code. Part of the statute states: "The clerk shall send the fees and costs collected under this section to the comptroller at least as frequently as monthly. The comptroller shall deposit the fees in the judicial fund." Tex. Gov't Code Ann. § 51.702(d). The statute specifically designates the Comptroller as the official responsible for the conduct Caldwell seeks to enjoin. Unlike the Attorney General in *Lone Starr Multi Theatres,* the Comptroller has enforced the civil statute complained of in this case and presumably will continue to enforce it, thereby conferring jurisdiction on the court.

The Comptroller suggests that even if the court were to declare the statute unconstitutional and enjoin the Comptroller from administering the fees, counties could continue to collect the fees; their actions would not be the subject of the injunction. We disagree with this proposition for two reasons. First, if the Comptroller were enjoined from depositing the fees in the judicial fund and distributing them to the counties, the counties would have no incentive to continue to collect the fees. Section 51.702 mandates county clerks to send collected fees to the Comptroller at least as frequently as monthly. *See* Tex. Gov't Code Ann. § 51.702(d). It does not authorize the counties to hold onto the funds indefinitely or to supplement the judges' salaries on their own. If the Comptroller were enjoined from depositing and disbursing the fees, the funds could not be returned to the counties to supplement the judges' salaries. Under the statutory scheme the counties are unable to supplement their judicial salaries directly by collecting the fees.

■ Moreover, if the court were to declare the statute unconstitutional but deny injunctive relief, the Comptroller's conduct in depositing the funds and distributing them would not be authorized by statute. Likewise, the counties' collection of the fees would no longer be authorized. If the Comptroller were to continue to

deposit the funds and distribute them, the Comptroller would in effect be depositing and distributing funds that were collected pursuant to an unconstitutional statute, and the fees would not be legitimate funds of the State or the counties. Because those funds include fees paid by Caldwell, Caldwell's rights may have been violated by the Comptroller's actions, rendering a suit against the Comptroller to remedy the violation or to prevent its recurrence a justiciable controversy within the trial court's jurisdiction. We therefore hold the Comptroller is engaging in an activity that. is the possible subject of declaratory and injunctive relief.[4] We overrule the Comptroller's third issue. In deciding this interlocutory appeal, we express no opinion on the merits of Caldwell's challenge to the statute.

## CONCLUSION

Because we determine Caldwell's suit was not a suit against the State within the rule of sovereign immunity, we hold the trial court was not deprived of its jurisdiction. We further hold Caldwell was not limited to the remedies found in the Tax Code or the Code of Criminal Procedure and that her suit presented a justiciable controversy. Therefore, we affirm the trial court's order denying the plea to the jurisdiction.

---

**4.** In reaching this holding, we do not intimate whether an injunction is appropriate under these facts. The injunctive relief sought depends upon the premise that the Comptroller's actions were unlawful or unconstitutional. *See Bagg v. University of Tex. Med. Branch,* 726 S.W.2d 582, 585 (Tex.App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.). Even if the trial court determines the challenged statute is unconstitutional, the court must still determine whether injunctive relief is a proper remedy in this case. If it is indeed Caldwell's intention to enjoin the "collection" of the fees, then the court must grapple with

whether all necessary parties have been named in this dispute and whether the Comptroller is the party that is engaging in the activity sought to be enjoined. However, because the Comptroller is a proper party to a suit seeking declaratory relief, the district court would not be deprived of its jurisdiction to consider this cause. If a plaintiff's pleadings do not affirmatively show a lack of jurisdiction, the proper remedy is to allow the plaintiff an opportunity to amend its pleadings before dismissing the cause. *See City of Austin v. L.S. Ranch, Ltd.,* 970 S.W.2d 750, 753 (Tex.App.—Austin 1998, no pet.).